# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Harold Blum, et al.
_____
PLAINTIFF

VS.

RMI Network Services, Inc.
_____
DEFENDANT

CASE NO. 03 C 7334

Judge Plunkett

**FILED**
MAR 05 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF MOTION

TO: _____
_____
_____

On __March 11, 2004__, at __11:00__ a.m./ p.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable __Plunkett__ in Courtroom __1441__ at the United States District Court Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, and present __Motion to Vacate Dismissal for Want of Prosecution__

Name __Scott A. Thackeberry__
Address __3908 Lincoln Road  P.O. Box 3453__
City / Zip __Oak Brook, IL 60522__
Telephone __(847) 736-1696__

## PROOF OF SERVICE

I, the undersigned (plaintiff / defendant), certify that on the ____ day of _____, _____, I served a copy of this _____ to each person whom it is directed by way of _____.

_____  _____
SIGNATURE / CERTIFICATION              DATE

CREATED ON 2/22/02

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAROLD BLUM, NANCY BENSEN, JAMES C. STRAIT, SEAN MCEWAN, DALE NOTBUSCH, EDWARD HEALY, DIANE MALONE, JEFFREY EDWARDS and MORGAN SHANK,<br><br>Plaintiffs,<br><br>v.<br><br>RMI NETWORK SERVICES, INC., KIM FLAGSTAD (a/k/a KIM M. FLAGSTAD, KIM MICHELLE FLAGSTAD, KIM WELCH, KIM M. WELCH, KIM FLAGSTAD WELCH, KIM WELCH FLAGSTAD AND MRS. GEORGE E. WELCH), WILLIAM BORGSTROM, MICHAEL CALUMET, MICHAEL SHAPIRO and DYNAMIC MANAGEMENT SOLUTIONS, INC.,<br><br>Defendants. | FILED<br>MAR 0 5 2004<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT<br><br>No.: 03 C 7334<br>[Motion to Vacate Dismissal for Want of Prosecution]<br>Judge Plunkett |

### MOTION TO VACATE DISMISSAL FOR WANT OF PROSECUTION

The Plaintiffs, Harold Blum, Nancy Bensen, James C. Strait, Sean McEwan, Dale Notbusch, Edward Healy, Diane Malone, Jeffrey Edwards and Morgan Shank, state:

1. The Plaintiffs filed their original cause of action on October 16, 2003.

2. This Court dismissed that cause of action on February 5, 2004 for want of prosecution.

3. Unknown to the Plaintiffs at the time of filing, and learned thereafter, the Defendant RMI Network Services, Inc., moved from its location as stated in the

Page 1 of 3



original Complaint and began operating under an alternate name of Flagship Integration Services, Inc. Defendant, Kim Flagstad did publicly state that the reason for these changes was to escape the claims of people, such as the Plaintiffs.

4. Additionally, most of the other Defendants changed the location of their business operations.

5. Thereafter, another employee, Steven F. Neylon, of RMI Network Services, Inc., requested permission of the Plaintiffs to join them in their suit.

6. Thereafter, Flagship Integration Services, Inc., filed suit against Steven Neylon, in the Circuit Court of Winnebago of the Seventeenth Judicial Circuit, Winnebago County, Illinois, Case No.: 2004 L 60, Exhibit A, as attached herein incorporated by reference. With the filing of that state action, the Plaintiffs learned of the aforementioned facts as alleged herein.

7. The Plaintiffs to fully and fairly protect their causes of action, to fulfill their desire to add Steven Neylon as another Plaintiff and to protect their rights to assets that they may be entitled to after a full and fair hearing of all issues ask this Court to vacate its dismissal for want of prosecution and for leave to file an Amended Complaint adding Steven Neylon as Plaintiff and adding additional Defendants discovered since the Plaintiffs filed their Complaint.

8. Additionally, the Plaintiffs notify this Court that they additionally will file the same Amended Complaint in Winnebago County and seek to have their action consolidated with the pending Complaint against Steven Neylon.

9. While the Plaintiffs may wish to proceed in Winnebago County, the Plaintiffs

cannot know whether the Defendants will seek removal to the United States District Court or not; hence, they ask this Court to vacate its dismissal, in part, for the sake of judicial economy.

10. Lastly, the Plaintiffs ask this Court to authorize the issuance to Alias Summons to all Defendants named in said Amended Complaint when filed.

WHEREFORE the Plaintiffs pray for the following relief:

A. The Court vacates its earlier dismissal of this cause for Want of Prosecution;

B. The Court grants the Plaintiffs the right to add Steven F. Neylon as another Plaintiff;

C. The Court grants the Plaintiffs fourteen days to file an Amended Complaint naming additional Defendants and additional causes of action;

D. The Court grants the Plaintiffs the right to cause Alias Summons to issue; and,

E. The Court grants such other relief that it deems fair, equitable or necessary to ensure that justice is done in this cause.

Attorney for the Plaintiffs

Name: Scott A. Thackaberry
Atty. for: Plaintiffs
Address: 3008 Lincoln Road
P.O. Box 3453
Oak Brook, IL 60522
Tel. No.: (847) 736-1696

FILED
Date: 2/19/04
Marc A. Gasparini
Clerk of the Circuit Court
_____ Deputy
Winnebago County, IL.

COPY

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
WINNEBAGO COUNTY, ILLINOIS

FLAGSHIP INTEGRATION SERVICES, INC., )
an Illinois corporation, )
  )
 Plaintiff, )
  )
v. ) Case No.
  ) 2004 L 60
STEVEN F. NEYLON, )
  )
 Defendant. )

## VERIFIED COMPLAINT

Plaintiff, Flagship Integration Services, Inc. ("Flagship"), by its attorneys, for its Verified Complaint against the Defendant, Steven F. Neylon ("Neylon"), states, as follows:

### PARTIES

1. Plaintiff, Flagship Integration Services, Inc. ("Flagship"), is an Illinois corporation which has its principal place of business at Deer Park, Illinois.

2. Defendant, Steven F. Neylon ("Neylon"), is an individual residing at 1113 Mondale Drive in Rockord, Illinois, who was formerly employed as a salaried employee by Flagship.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over Defendant pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-209(b)(4) because Defendant resides in the State of Illinois.

4. Venue is proper in Winnebago County pursuant to 735 ILCS 5/2-101 as the Defendant resides in Winnebago County.

### FACTS

5. Flagship is a Microsoft, Novell and Linux network integration company specializing in the review, planning, design, implementation, troubleshooting and support of

230874.1 043260-08697


EXHIBIT A

mission-critical enterprise computer networks. Flagship works closely with their clients to understand their business issues and to develop solutions that employ appropriate technologies to address their specific needs.

6. On December 29, 2003, Flagship purchased the assets of RMI Network Services, Inc. ("RMI") from Continental Community Bank and Trust Company at a Uniform Commercial Code ("UCC") Sale. A true and correct copy of the Bill of Sale is attached as Exhibit A.

7. Part of the assets purchased by Flagship at the UCC sale were RMI's contracts and general intangibles, which included non-compete agreements.

8. Flagship is now the owner and holder of RMI's non-compete agreements.

9. Previously, on or about February 2001, Neylon began his employment with RMI as a System Administration Engineer. Since December 2003, Neylon has been employed with Flagship. While at RMI and subsequently with Flagship, Neylon worked as a System Administration Engineer ("Engineer"). His duties as an Engineer included, but were not limited to, maintaining the environment, monitoring daily back-up, software updates, updating printer drivers, and working with user base to adapt technological tools to the purpose of a client's business.

10. As an employee of RMI and later, Flagship, Neylon was provided access to RMI and Flagship's trade secrets and confidential information relating to mission-critical enterprise computer networks and customer lists. RMI did give and Flagship currently has given Neylon access to this information with the expectation that Neylon would not use the information other than to benefit RMI and Flagship. This information is not publicly available, and RMI did restrict and Flagship currently has restricted internal access of this information to only employees who have a business related purpose for using the information. The information was

valuable to RMI and is now valuable to Flagship, because they expended considerable amounts of time and money to develop the mission-critical enterprise computer networks and the secrecy of this information is paramount to Flagship's competitive edge.

11. On or about January 21, 2001, Neylon executed an agreement (the "Agreement") with RMI whereby Neylon agreed not to "participate directly or indirectly, in any capacity, in any business or activity that is in competition with [RMI]." Moreover, pursuant to the Agreement, Neylon agreed "that for one (1) year from and after termination of [his] employment, ... [he] shall not, directly or indirectly in any capacity, engage in the State of Illinois in any activity which is in direct competition with [RMI's] activities or perform any of the services offered by [RMI] for any of *RMI's customers* with whom [he] solicited and [RMI] had business dealings in the year next preceding the termination of [his] employment or call upon such customers or discourage them from doing business with [RMI]" (emphasis added). A true and correct copy of the Agreement is attached as Exhibit B.

12. In exchange for Neylon's execution of the Agreement, RMI and now Flagship agreed to continue employing Neylon.

13. On or about February 1, 2004, Neylon resigned from Flagship.

14. The Testor Corporation ("Testor") was one of RMI's customers.

15. Testor was a customer of RMI's since 1993.

16. While at RMI and subsequently Flagship, Testor was the only client with whom Neylon worked. Neylon was hired specifically to work as the Engineer for Testor.

17. After Neylon's termination and through the present, Neylon has solicited and provided professional services, including performing the same duties as he did as an Engineer at RMI and Flagship, to Testor.

18. But for Neylon's employment with RMI and Flagship, Neylon would not have knowledge of, or developed any contact with RMI and Flagship's customers, including Testor for whom he is currently providing Engineer services.

19. By letter dated February 5, 2004, a copy of which is attached as Exhibit C, counsel for Flagship informed Neylon that he was in violation of the Agreement and demanded that he cease and desist his activities.

## COUNT I – BREACH OF CONTRACT

20. Flagship restates and realleges paragraphs 1 through 21 as if fully set forth herein.

21. Neylon's actions constitute a breach of the Agreement.

22. As a direct result thereof, Flagship has and will continue to suffer, unless injunctive relief is granted, immediate and irreparable injury for which there is no adequate remedy at law.

23. As a result thereof, Flagship has been and continues to be damaged in an amount in excess of $200,000.

WHEREFORE, Flagship Integration Services, Inc. respectfully requests that this Court enter an Order:

A. Preliminarily and permanently enjoining Steven F. Neylon from soliciting or providing his System Administrative Engineer services to any of RMI or Flagship's clients, including The Testor Corporation, from February 1, 2004 through February 1, 2005;

B. Preliminary and permanently enjoining Steven F. Neylon from disclosing or utilizing any confidential or proprietary information of RMI or Flagship;

C. Awarding Flagship compensatory damages in an amount in excess of $200,000; and

D.  Awarding Flagship its attorneys' fees, costs and such other and further relief as is just and equitable.

Dated: February 18, 2004

                                                Respectfully submitted,

                                                **FLAGSHIP INTEGRATION SERVICES, INC.**

                                                By: _____
                                                             One of its Attorneys

Eric S. Rein
Arika J. Osacky
Schwartz, Cooper, Greenberger
   & Krauss, Chtd.
180 North La Salle
Suite 2700
Chicago, IL 60601
(312) 346-1300
Firm ID #31395

Thomas P. Sandquist
Williams & McCarthy PC
321 W. State Street
Rockford, IL 61101
(815) 987-8900

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that she is President for the Plaintiff herein, a corporation organized and doing business in the State of Illinois, she is the authorized agent in this behalf for said Plaintiff, that the undersigned certifies that the statements set forth in this instrument are true and correct.

_____
Kim Flagstad

### BILL OF SALE

Continental Community Bank & Trust Co., Seller, as Secured Creditor, having an address at 2430 West Indian Trail, Aurora, IL, in consideration of a Note in the amount of FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00) (and the security interests and guaranty given in connection therewith), receipt of which is hereby acknowledged, does hereby sell, assign, transfer and set over to Buyer, Flagship Integration Services, Inc., having an address at 853 N. Quentin Road, Suite 330, Palatine, IL, the following described personal property, to-wit:

### SEE EXHIBIT "A" ATTACHED

This Bill of Sale is issued pursuant to a public sale of collateral held on December 29, 2003 and is subject to the terms of sale set forth in the notice therefore. THIS BILL OF SALE IS ISSUED "AS IS, WHERE IS," WITH ALL FAULTS AND WITHOUT RECOURSE, AND SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE SUBJECT MATTER OF THIS SALE OR THE CONDITION OF TITLE THERETO, AND THE SALE IS SUBJECT TO ANY AND ALL TAXES, LIENS, CLAIMS OR ENCUMBRANCES.

IN WITNESS WHEREOF, Seller has signed and sealed this Bill of Sale at Aurora, this 29 day of December, 20 03.

CONTINENTAL COMMMUNITY BANK & TRUST CO.

By: _____
Name: Robert D. Arlen
Its: Senior Vice President

{F:\wpdocs\2802\7482\0002\1205.DOC;}



02/18/2004 Case: 1:03-cv-07334 Document #: 6 Filed: 03/05/04 Page 12 of 16 PageID #:39 ☎003/004
FEB 18,2004 18:06                               000-000-00000                                    Page 2

FROM : Flagship Integration Services     PHONE NO. : 847 726 8170          Feb. 17 2004 04:46PM P2

## EXHIBIT "A"

All equipment now owned by RMI Network Services, Inc., including but not limited to, manufacturing equipment, delivery equipment, warehouse equipment, office equipment, office, warehouse and plant furnishings and fixtures; all inventory contracts and accounts receivable now owned by RMI Network Services, Inc. and all general intangibles now owned by RMI Network Services, Inc. including, without limitation, the following:

Compaq Proliant 3000 Tower to Rack Kit

Compaq Proliant DL380 P3-1000Mhz, Rack
256MB RAM Kit
36GB Pluggable Wide Ultra3 SCSI 10K RPM Universal Drive

Compaq Proliant DL380 P3-1000Mhz, 128 MB, Rack
256MB RAM Kit
36GB Pluggable Wide Ultra3 SCSI 10K RPM Universal Drive

256MB Registered SDRAM DIMM 1x256MB for Proliant 1600

1x8 Port Switch Box Opal
Monitor/Utility Shelf Kit Beach Gray for 14-17 Monitors

T1 Citrix Server

Cisco Routed WAN Solution for NT, includes CD & Docs

Cisco LAN Mgmt for NT, includes, CM3, RME 3, CV 5, TD5, CFN

Cisco Catalyst 2948G Switch 48 10/100TX (RJ 45) 12 1000X (Gbic Slots)

Cisco Catalyst 4000GB Module Server Switching w/ 18 Gbic Ports

1000BSX Shortwavelength GBIC (Multimode Only)

Cisco 3662-AC
Cisco 3660 Dual 10/100 E 6-Slot Modular Router-AC w/ IP SW
Enterprise PW Plus IPSEC 3 DES Feature Pack
8MB Flash SIMM for the Cisco 3600 Series
Upgrade Cisco 3600 32MB DRAM Field
2 WAN Card Slot Network Module (No LAN)
2-Port RJ45 Multiflex Trunk T1
DES/3DES VPN Encryption for 3660-High Performance
600W Redundant AC Power System w/DC Power Cables

{T:\wp\docs\236\57083\00027208.DOC;1}

8 Port ISDN BRI w/NT-1 Module
6 Port Digital Modem Network Module
3600 Modem Magement Technology License
Courier v.90 Everything 56K/14.4K Fax External

Viewsonic 21" Monitor
Compaq 35/70GB DLT 7000 SCSI DIFF Wide IDR/10 Slot
TL 891 Rack

    RMI Network Services, Inc. was formerly located at 2500 West Higgins Road, Suite 140, Hoffman Estates, Illinois. On information and belief, the Collateral is now located at the home of Kim Flagstad (President of RMI Network Services, Inc.), 225 Rue Judin, Deer Park, Illinois.

- 2 -

{F:\wpdocs\P862\0483\00022108.DOC.}

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

In consideration of my employment or continued employment by RMI NETWORK SERVICES, INC. (the "Company"), and in recognition of the fact that as an employee of the Company I will have access to the Company's customers and to confidential and valuable business information of the Company, I hereby agree as follows:

1.  **Duties of Employee.** I shall comply with all Company rules, procedures and standards, which may be in effect from time-to-time, governing the conduct of employees and their access to and use of the Company's property, equipment and facilities. I understand that the Company will make reasonable efforts to inform me of the rules, standards and procedures which are in effect from time to time and which apply to me.

2.  **Agreement Not to Compete With The Company.**

    A. As long as I am employed by the Company, I shall not participate directly or indirectly, in any capacity, in any business or activity that is in competition with the Company.

    B. In consideration of my employment or continued employment by the Company and in recognition of the fact that I will have access to the confidential information of the Company and that the Company's relationships with its customers constitute a substantial part of its good will, I agree that for one (1) year from and after termination of my employment, for any reason, unless acting with the Company's express prior written consent, I shall not, directly or indirectly in any capacity, engage in the State of Illinois in any activity which is in direct competition with the Company's activities or perform any of the services offered by the Company for any of the Company's customers with whom I solicited and the Company had business dealings in the year next preceding the termination of my employment or call upon such customers or discourage them from doing business with the Company.

    C. I acknowledge that it is essential to the protection of the Company's business that I be restrained from (a) soliciting or inducing any employee of the Company to leave his or her employment; and (b) hiring or attempting to hire any employee of the Company for a period of one (1) year after termination of my employment with the Company. I shall not, directly or indirectly solicit or induce, or attempt to solicit or induce, any current or future employee of the Company to leave the Company for any reason whatsoever.

3.  **Unauthorized Disclosure of Trade Secrets.** While employed by the Company and thereafter, I shall not, directly or indirectly, disclose to anyone outside of the Company or use any Trade Secrets (as defined in the Illinois Trade Secrets Act) other than pursuant to my employment by and for the benefit of the Company.

4.  **Developments as Property of the Company.** All Trade Secrets and all other discoveries, inventions, processes, methods and improvements, conceived, developed or otherwise made by me at any time, alone or with others and in any way relating to the Company's present or future business or products, whether or not patentable or subject to copyright protection, and whether or not reduced to tangible form or reduced to practice, during the period of my employment with the Company (Developments"), shall be the sole property of the Company. I agree to, and hereby do, assign to the Company, all my right, title and interest throughout the world in and to allDevelopments . I agree that all such Developments shall constitute works made for hire under the patent and copyright laws of the United States and hereby assign to the Company, all copyrights, patents and other proprietary rights I may have in any such Development.

5.  **Return of Property.** At any time upon request of the Company, and upon termination of my employment, I shall return promptly to the Company, all copies of all Trade Secrets or Developments, and all records, files, blanks, forms, materials, supplies, and any other materials furnished, used or generated by me during the course of my employment, and any copies of the foregoing, all of which I recognize to be the sole property of the Company.

1



6. **Special Remedies.** I recognize that money damages alone would not adequately compensate the Company in the event of breach by me of the Agreement, and I therefore agree that, in addition to all other remedies available to the Company at law or in equity, the Company shall be entitle to temporary or permanent injunctive relief for the enforcement hereof, without bond. Failure by the Company to insist upon strict compliance with any of the terms, covenants, or conditions hereof shall not be deemed a waiver of such terms, covenants or conditions.

7. **Miscellaneous Provisions.** This Agreement contains the entire and only agreement between me and the Company respecting the subject matter hereof and supersedes all prior agreements and understandings between us as to the subject matter hereof; and no modifications shall be binding upon me or the Company unless made in writing and signed by me and an authorized officer of the Company.

My obligations under this Agreement shall survive the termination of my employment with the Company regardless of the manner of or reasons for such termination, and regardless of whether such termination constitutes a breach of this Agreement or of any other agreement I may have with the Company. If any provisions of this Agreement are held or deemed unenforceable or too broad to permit enforcement of such provision to its full extent, then such provision shall be enforced to the maximum extent permitted by law. If any of the provisions of this Agreement shall be construed to be illegal or invalid, the validity of any other provision hereof shall not be affected thereby.

This Agreement shall be governed and construed according to the laws of the State of Illinois, and shall be deemed to be effective as of the first day of my employment by the Company.

8. **Termination of Employment.** I understand that this is not an employment agreement and that my employment may be terminated by the Company at any time, with or without cause, and I understand that I am an employee-at-will.

BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTOOD ALL OF ITS PROVISIONS AND THAT I AGREE TO BE FULLY BOUND BY THE SAME.

Employee: _____ Date: 1-22-2001

Accepted on Behalf RMI Network Services, Inc.
BY: _____ Date: 11/5/01

2



SCHWARTZ COOPER

GREENBERGER KRAUSS

Eric S. Rein

Direct: (312) 845-5106
Direct Fax: (312) 264-2467
rrein@scgk.com

February 5, 2004

**VIA CERTIFIED MAIL/RETURN
RECEIPT REQUESTED**

Steven F. Neylon
1113 Mondale Dr.
Rockford, IL 61108



Certified Article Number
7160 3901 9844 3329 3752
SENDERS RECORD

Re: **Flagship Integration Services, Inc.**

Dear Mr. Neylon:

We represent Flagship Integration Services, Inc. ("Flagship") which has referred for our attention the matter of your violation of a certain confidentiality and non-competition agreement dated January 21, 2001 with RMI Network Services, Inc. ("the Non-Compete Agreement"). As you may know, Flagship purchased the assets of RMI Network Services, Inc. ("RMI") from Continental Community Bank and Trust Company at a Uniform Commercial Code Sale on December 29, 2003. A part of the assets purchased were contracts and general intangibles.

Under controlling law, non-compete agreements constitute general intangibles. Accordingly, Flagship is now the owner and holder of the Non-Compete Agreement. Under the Non-Compete Agreement, you agreed not to engage in any activities or perform any services for RMI's customers for one year after termination of employment without written consent. The Testor Corporation was one of RMI's customers.

It is our understanding you are or will be actively engaged with The Testor Corporation, which is in direct violation of this Non-Compete Agreement. Therefore, demand is made upon you to immediately cease and desist from all contact with The Testor Corporation. Otherwise, Flagship will have no alternative but to take whatever action is necessary to best protect its interests under the Non-Compete Agreement.

You have been advised and may govern yourself accordingly.

Very truly yours,

Eric S. Rein

RR/pjc
cc: The Testor Corporation
    Kim Flagstad (via facsimile)

EXHIBIT C

Law Offices:
180 North LaSalle Street
Suite 2700
Chicago, Illinois 60601
tel 312.346.1300
fax 312.782.8416
www.scgk.com

229389.1 050431-32715