DOCKETED

APR - 1 2004

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

FILED

MAR 2 1 2004 *rq*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| HAROLD BLUM, NANCY BENSEN, JAMES C. STRAIT, SEAN MCEWAN, DALE NOTBUSCH, EDWARD HEALY, DIANE MALONE, STEVEN F. NEYLON, JEFFREY EDWARDS and MORGAN SHANK, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 03 C 7334 [A mended Complaint] Judge: Plunkett |
| RMI NETWORK SERVICES, INC., FLAGSHIP INTEGRATION SERVICES, INC., KIM FLAGSTAD (a/k/a KIM M. FLAGSTAD, KIM MICHELE FLAGSTAD, KIM WELCH, KIM M. WELCH, KIM FLAGSTAD WELCH, KIM WELCH FLAGSTAD AND MRS. GEORGE E. WELCH), WILLIAM BORGSTROM, MICHAEL CALUMET, MICHAEL SHAPIRO and DYNAMIC MANAGEMENT SOLUTIONS, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

The Plaintiffs, Harold Blum, Nancy Bensen, James C. Strait, Sean McEwan, Dale

Notbusch, Edward Healy, Diane Malone, Steven F. Neylon, Jeffrey Edwards and Morgan Shank,

allege:

1.    The Plaintiff, Harold Blum, "Blum," resides at 1316 Spring Beach Way, Village

of Cary, Mc Henry County, Illinois.

2.    The Plaintiff, Nancy Bensen, "Bensen," resides at 3954 Whispering Trails Drive,



Village of Hoffman Estates, County of Cook, Illinois.

3. The Plaintiff, James C. Strait, "Strait," resides at 1806 Canterfield Parkway West, Village of West Dundee, County of Kane, Illinois.

4. The Plaintiff, Sean McEwan, "McEwan," resides at 704 Ridge Drive, City of Marengo, County of Mc Henry, Illinois.

5. The Plaintiff, Dale Notbusch, "Notbusch," resides at 10115 Wilmette Avenue, Village of Algonquin, County of Mc Henry, Illinois.

6. The Plaintiff, Steven F. Neylon, "Neylon," resides at 1113 Mondale Drive, City of Rockford, County of Winnebago, Illinois.

7. The Plaintiff, Edward Healy, "Healy," resides at 627 Leonard Parkway, City of Crystal Lake, County of Mc Henry, Illinois.

8. The Plaintiff Diane E. Malone, "Malone," resides at 488 Rose Lane, Village of Bartlett, County of Cook, Illinois.

9. The Plaintiff, Jeffrey Edwards, "Edwards," resides at 608 N. Wolf Road, #8, Village of Hillside, County of Cook, Illinois.

10. The Plaintiff, Morgan Shank, "Shank," resides at 136 John Street, City of DeKalb, County of DeKalb, Illinois.

11. The Defendant, RMI Network Services, Inc., "RMI," is a duly organized corporation, operating in the State of Illinois, with its principal offices located, on information and belief at 225 Rue Jardin, Village of Deer Park, County of Lake, Illinois.

12. The Defendant, Flagship Integration Services, Inc., is, on information and belief,

a duly organized corporation, operating in the State of Illinois, with its principal offices located at 225 Rue Jardin, Village of Deer Park, County of Lake, Illinois. This Defendant's principal owner is the Defendant Kim Flagstad. This Defendant is the principal beneficiary of an alleged sale, under the Uniform Commercial Code; whereby, with the help of Continental Community Bank & Trust Co., the Defendant RMI transferred its principal assets to this Defendant, after the Plaintiff's filed their Complaint.

13.     The Defendant, Kim Flagstad (a/k/a Kim M. Flagstad, Kim Michele Flagstad, Kim Welch, Kim M. Welch, Kim Flagstad Welch, Kim Welch Flagstad and Mrs. George E. Welch), "Flagstad," is the principal shareholder, chief operating officer and fiduciary of the RMI Network Services, Inc., employee benefit plans. While Flagstad owns houses in Florida and Arizona, on information and belief, Flagstad principally resides at 225 Rue Jardin, Village of Deer Park, County of Lake, Illinois.

14.     The Defendant, William Borgstrom, "Borgstrom," is an employee of Defendant RMI and the paramour of Defendant Flagstad, who, while maintaining a residence at 1330 W. Columbia, City of Chicago, County of Cook, Illinois, on information and belief, principally resides with Defendant Flagstad at 225 Rue Jardin, Village of Deer Park, County of Lake, Illinois.

15.     The Defendant, Michael Calumet, "Calumet," is the chief financial officer of Defendant RMI with signatory authority over the bank accounts of Defendant RMI; Calumet resides at 6553 N. Oxford, City of Chicago, County of Cook,

Illinois.

16.    The Defendant, Michael Shapiro, "Shapiro," is an officer and, on information and belief, the principal shareholder of Dynamic Management Solutions, Inc., "Dynamic," a company operating in the State of Illinois whose principal office is at 676 N. Michigan Avenue, Suite 3120, City of Chicago, County of Cook, Illinois; Shapiro also assumes finance or administrative duties for the Defendant RMI; and Shapiro resides at 217 16th Street, City of Wilmette, County of Cook, Illinois.

17.    The Plaintiffs were, from time to time, all employees of Defendant RMI, who benefitted from the work efforts of the Plaintiffs.

18.    This action arises under the Employee Retirement Income Security Act of 1974 (29 U.S.C.A., Sections 1001, et seq.). The court's jurisdiction is based on Section 1331 of Title 29 of the Code (29 U.S.C.A., Section 1331).

19.    Venue is proper pursuant to 1391(a) of Title 28 of the Code (28 U.S.C.A., Section 1391(a)).

20.    Moreover, this action arises under Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section, 1001 et seq., and this court has jurisdiction under ERISA Section 502(e), 29 U.S.C. Section 1132(e) with venue of this action properly laid in the Northern District of Illinois by virtue of ERISA Section 502(e)(2), 29 U.S.C. 1132(e)(2).

21.    Further, this action arises under Sections 1962(c) of Title 18 and is a federal question pursuant to Section 1964(c) of Title 18.

I

## BREACH OF FIDUCIARY DUTY

22.     The Defendant Flagstad is both a trustee and fiduciary over the Plaintiff's

employee benefit plan within the meaning of ERISA Section 3(21), 29 U.S.C.

Section 1002(21) and subject to the fiduciary duties imposed by Sections 404 and

409 of ERISA, 29 U.S.C. 1104 and 1109.

23.     The Defendant Calumet possessed signatory authority over the funds maintained

in a bank account after collection of said funds from the Plaintiff's payroll.

24.     The Defendant Flagstad, along with Defendant Calumet, approved and made

distributions to Defendant Borgstrom, on information and belief, of plan assets

that she commingled with the general assets of the corporation.

25.     Said distributions have, in part, caused delays in the funding or timely turning

over of assets, to those entities charged with maintaining the plan. Those delays

or failures to timely turnover funds resulted in a significant financial loss to the

Plaintiffs. Those delays or failure to timely turnover funds violates the Code of

Federal Regulations, Section 2510.3-102(a) that states that such contributions to

the plan must be made as of the earliest date on which such contributions can be

reasonably segregated from the employer's general assets, which here was the

date that the employee's payroll checks had been issued.

26.     Additionally, Defendant Flagstad, on information and belief has directed those

commingled funds, along with other assets of Defendant RMI to pay for

Defendant Flagstad's homes in Florida and Arizona, her boat and her plane, as

well as to pay for personal items, including, but not limited to, items such as Kitty
Liter, gasoline, cosmetics and food.

27.     The Defendant Flagstad approved and distributed said funds with the knowledge,
assistance and consent of Defendant Calumet, who delayed those contributions to
the plan, in part for the benefit of Defendant Borgstrom.

28.     The Defendants RMI, Flagstad and Calumet failed to discharge their fiduciary
duties regarding plan assets as required by 29 U.S.C. Section 1104(a)(1)(A) and
(B), in that among other things, they permitted the Defendants Flagstad and
Calumet to obtain control over plan assets which were then, on information and
belief, transferred to the Defendants Borgstrom and Flagstad.

29.     Moreover, the Defendants RMI, Flagstad and Calumet did conspire to issue
payroll stubs showing that the funds withheld from the Plaintiff's payroll checks
had been timely turned over to the third party maintaining accounts for said funds.

30.     As such, the Defendants RMI, Flagstad and Calumet did fail to inform, and did
actively conceal from, the Plaintiffs that the funds for their employee benefits had
not been properly held in a trust account segregating those funds from the General
Assets of the Defendant RMI.

31.     Further, the Defendants RMI, Flagstad, Flagship and Calumet did conspire to
deny Plaintiff Neylon his rights under ERISA, by knowingly failing to enroll him
in those health plans of RMI and Flagship, when he became eligible for such
employer paid benefit. Then, the Defendants Flagship and Flagstad sought to
conceal this omission, by issuing a health plan identification card to Neylon, after

Neylon terminated his employment with Defendant Flagship. The health plan identification card issued did not provide any benefit for Plaintiff Neylon. Moreover, the delay in enrolling Plaintiff Neylon denied him the opportunity to plan and obtain any medically necessary care to which he was entitled.

32.   On information and belief, the Plaintiff Shank and Plaintiff Neylon did not participate in the aforementioned 401(k) employee benefit plan.

33.   As a direct and proximate result of the Defendants RMI, Flagstad and Calumet's breach of their fiduciary duty, the Plaintiffs, as identified above, are entitled to damages in an amount to be determined at trial.

34.   To the extent or degree that Defendant Borgstrom received cash or other benefits derived from the forgoing breaches of fiduciary duty, the Plaintiffs, as identified above, ask this court to order the Defendant Borgstrom to turnover said sums with any profits thereon to the Plaintiffs.

35.   To the extent and degree that the Defendants have improperly or wrongfully transferred Defendant RMI's assets to Defendant Flagship. The Plaintiffs ask this Court to order the Defendant Flagship to turnover any such money or personal property, including, but not limited to those assets transferred as a result of the alleged U.C.C., with any profits thereon to the Plaintiffs.

36.   Moreover, the Plaintiffs, as identified above, ask this Court to order such other relief as this court deems fair and just.

II

RICO

37.     The Plaintiffs re-allege Paragraphs 1 through 36.

38.     The theft or embezzlement of an employee benefit plan in violation of 18 U.S.C. 664 is a predicate act for the purposes of establishing a violation of RICO. 18 U.S.C. 1961(1).

39.     The Defendant RMI, by and through its officers and agents, did conspire with the Defendants Flagstad, Calumet and Borgstrom to engage in a pattern of actions, including, but not limited to, issuing payroll checks and ERISA plan notices, communications and information so as to gain control over the assets of the Plaintiff's qualified employee benefit plan, commonly known as a 401(k) plan.

40.     The Defendants RMI and Flagship, by and through their officers and agents, did conspire with the Defendant Flagstad to engage in a pattern of actions, including, but not limited to, issuing offers of employment, ERISA plan notices, communications and information so as to gain control over amounts that they were lawfully and legally obligated to pay, under the qualified health and dental plans, for the benefit of Plaintiff Neylon.

41.     The Defendants RMI, Flagstad, Calumet and Borgstrom engaged in this conduct, regarding the 401(k) plan, for personal gain and benefit by misleading the Plaintiffs, except Shank and Neylon, as to the cause of their economic loss.

42.     The Defendants RMI, Flagship and Flagstad engaged in this conduct, regarding the health and dental plans, for personal gain and benefit by misleading Plaintiff Neylon as to the cause of his economic loss.

43.     As such, the Plaintiffs, except Shank, claim damages in an amount to be determined at trial, including, but not limited to compensatory damages, statutory damages, attorneys' fees and costs.

III

RICO

44.     The Plaintiff's re-allege Paragraphs 1 through 43.

45.     Despite the Defendant RMI's continued and persistent failures to pay employees' wages for work done and failure to make timely contributions to the Defendants RMI's employee benefit plans, the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic have conspired to advertise positions of employment, using both the internet and phones, as well as the mails, to contact prospective and current employees. These Defendants contacted the Plaintiffs to induce them to work, or continue to work, for Defendant RMI, with the intent to benefit from the services provided.

46.     Despite the Defendant Flagship's failure to timely, if at all, pay wages for work done and failure to make, or to make timely, contributions to the Defendant Flagship's health and dental plans, the Defendants Flagship and Flagstad, have conspired to advertise positions of employment using both the internet and phones, as well as the mails, to contact Plaintiff Neylon. These Defendants contacted Plaintiff Neylon to induce him to work, and to continue work, for the Defendant Flagship, with the intent to benefit from the services provided.

47.   As such, these Defendants did make misrepresentations, or omitted disclosing relevant information, regarding the financial condition of the Defendants RMI, so as deceive the Plaintiffs into going to work, or continuing to work, for Defendants RMI.

48.   As such, the Defendants Flagship and Flagstad, did make misrepresentations, or omitted disclosing relevant information, regarding the financial condition of the Defendant Flagship, so as to deceive the Plaintiff Neylon into going to work, or continuing to work, for Defendant Flagship.

49.   At all times, the Plaintiffs were entitled to reasonably rely on the misrepresentations of the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic.

50.   At all times, the Plaintiff Neylon was entitled to reasonably rely on the misrepresentations of the Defendants Flagship and Flagstad.

51.   All Plaintiffs relied on the misrepresentations or omissions of these Defendants, as set forth herein.

52.   The Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic engaged in making misrepresentations or omissions for personal gain and benefit.

53.   The Defendants Flagship and flagstad engaged in making misrepresentations or omissions, to Plaintiff Neylon, for the personal gain and benefit.

54.   The reasonable reliance of the Plaintiffs upon the misrepresentations and omissions of the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic were both the direct and proximate cause of the financial losses of the Plaintiffs.

55.     The reasonable reliance of the Plaintiff Neylon upon the misrepresentations and

        omissions of the Defendants Flagship and Flagstad were both the direct and

        proximate cause of the financial losses of the Plaintiffs.

56.     The Plaintiffs seek damages in an amount to be determined at trial, including, but

        not limited to, compensatory damages, statutory damages, attorneys' fees and

        costs.


IV

MULTIPLE VIOLATIONS OF THE ILLINOIS WAGE PAYMENT

AND COLLECTION ACT


57.     The Plaintiff's re-allege Paragraphs 1 through 56.

58.     The Plaintiffs, as employees of Defendant RMI, are entitled to compensation for

        services rendered pursuant to 820 ILCS 115/4 in a time, place and manner

        consistent with 820 ILCS 115/4.

59.     The Defendants RMI, Flagship and Flagstad, by her tacit disregard for the

        corporate identity, and Calumet have breached their respective duties to pay

        wages and compensation consistent with 820 ILCS 115/4.

60.     To wit, all Plaintiffs have been injured in an amount to be determined at trial.

V

FRAUD IN THE INDUCEMENT TO CONTRACT

61.     The Plaintiffs re-allege Paragraphs 1 through 60.

62.     The Defendants RMI, Flagstad, Flagship, Calumet, Shapiro and Dynamic
        engaged in affirmative actions and omissions designed to mislead prospective job
        candidates as to the liquidity and solvency of Defendant RMI.

63.     These actions included, but are not limited to, advertising positions of
        employment for compensation on the World Wide Web when the Defendants
        RMI, Flagstad, Flagship, Calumet, Shapiro and Dynamic either knew or should
        have known that no funds for compensation were available, by issuing letters
        mailed letters of employment that these Defendants either knew or should have
        known could not have been honored, by alleging the existence of a 401(k)
        retirement plan without disclosing breaches of fiduciary duty that had or were
        about to occur, without disclosing that, from time to time, the Defendant RMI
        issued payroll checks that were dishonored by the institution upon which those
        checks were drawn, without disclosing that some employees were not added, or
        were not added timely, to the qualified employer health and dental plans and
        without disclosing that, from time to time, Defendant Flagstad engaged in writing
        checks on accounts without funds and that she subsequently deposited those
        drafts so drawn in other accounts upon which the company issued payroll checks.

64.     The Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic made these
        affirmative misrepresentations, or concealed omissions, with the intent that the
        Plaintiffs would rely on them; the Plaintiffs were reasonably entitled to rely on
        the affirmative misrepresentations, or omissions, of the Defendants RMI,
        Flagstad, Calumet, Shapiro and Dynamic.

65.     As a direct and proximate cause of one or more these affirmative acts or

        omissions, the Plaintiffs have suffered an economic loss in an amount to be

        determined at trial.


# VI

## VIOLATION OF ILLINOIS STATUTE REGARDING DISHONORED DRAFTS

66.     The Plaintiffs re-allege Paragraphs 1 through 65.

67.     From time to time, the Defendants RMI, Flagstad, Flagship and Calumet did

        cause to issue payroll checks to various Plaintiffs that were not honored upon

        presentment to the drawee.

68.     These Plaintiffs, pursuant to 810 ILCS 5/3-806, are entitled to the amount of $25,

        or for all costs and expenses, including attorneys' fees, whichever is greater.

69.     As such, those Plaintiffs ask for damages in an amount to be determined at trial.


# VII

## FRAUD IN THE RETENTION OF EMPLOYEES FOR THE BENEFIT OF THE
## DEFENDANTS RMI AND FLAGSHIP

70.     The Plaintiffs re-allege Paragraphs 1 through 69.

71.     The Defendants did engage in a scheme to deceive the Plaintiffs as to the

        financial situation of the Defendant RMI, by engaging, or failing to engage, in

        actions that include, but are not limited to, issuing payroll checks that were

        dishonored, claiming the existence of signed client contracts at a meeting on

October 7, 2002 that the Defendants knew did not exist, issuing payroll stubs with affirmative misrepresentations upon them, issuing, or failing to issue, employee benefit plan communications, notices or information that should have included information relevant to the financial strength of the Defendant RMI.

72. The Defendants Flagship and Flagstad did engage in a scheme to deceive the Plaintiff Neylon as to the financial situation of the Defendant Flagship, by engaging, or failing to engage, in actions that include, but are not limited to, issuing a payroll check that was dishonored, issuing payroll stubs with affirmative misrepresentations upon them, issuing, or failing to issue, employee benefit plan communications, notices or information that should have included information relevant to the financial strength of the Defendant Flagship.

73. The Defendants either did not have a reasonable ground to know the aforementioned actions were true or in fact knew that some of those representations were false when made by them.

74. The Defendants committed such actions or omissions with the intent that the Plaintiffs would rely on them, so that the Defendant RMI could retain the Plaintiffs as employees and so that the Defendant RMI could enjoy the benefit of their collective work effort.

75. The Defendants Flagship and Flagstad committed such actions or omissions with the intent that the Plaintiff Neylon would rely on them, so that the Defendant Flagship could retain the Plaintiff Neylon and so that the Defendant Flagship could enjoy the benefit of his work effort.

76.     The Plaintiffs did continue to work in reasonable reliance on the representations
        of the Defendants and without knowledge of the falsity of those
        misrepresentations and without knowledge of the omissions.

77.     The Defendants engaged in this conduct for personal gain and benefit and those
        misrepresentations and omissions were both the direct and proximate cause of the
        economic losses sustained by the Plaintiffs.

78.     The Plaintiffs claim damages in an amount to be determined at trial.


                                          VIII

                            BREACH OF CONTRACT

79.     The Plaintiffs re-allege Paragraphs 1 through 78.

80.     An at will contract of employment existed between the Plaintiffs and the
        Defendant RMI and, as for Plaintiff Neylon, Flagship.

81.     The Defendants RMI and Flagship, by and through its officers and agents, did
        issue "offer letters" to the Plaintiffs specifying the amount of compensation.

82.     The Plaintiffs accepted employment and began work.

83.     The Plaintiffs did work for the benefit of Defendant RMI, and, as for Plaintiff
        Neylon, Flagship,  in exchange for the promises of wages and benefits.

84.     The Plaintiffs have performed work that at this time remains uncompensated for
        by the Defendant RMI, and, as for Plaintiff Neylon, Flagship.

85.     The Defendants RMI and Flagship have breached their respective duties to the
        Plaintiffs, respectively, under the parties' contracts of at will employment.

86.     As a direct and proximate cause of the Defendants RMI, and, as for Plaintiff

Neylon, Flagship's failure to perform under the at will contract of employment,

the Plaintiffs have sustained economic damages in an amount to be determined at

trial.


                                    IX

                          UNJUST ENRICHMENT

87.     The Plaintiffs re-allege Paragraphs 1 through 86.

88.     The Plaintiffs worked hours on the premises of Defendants RMI or Flagship, or at

remote locations at the request of an officer or agent of the Defendant RMI or

Flagship, under the direction and supervision of the officers or agents of the

Defendants RMI or Flagship.

89.     To date, the Defendants RMI or Flagship have enjoyed the benefit of the

Plaintiff's effort expended upon its behalf.

90.     Despite numerous demands by the Plaintiffs for the Defendants RMI or Flagship

to pay for the Plaintiff's respective work effort, the Defendants RMI and Flagship

have failed to pay for that work effort so expended by the Plaintiffs and

benefitting the Defendants RMI or Flagship.

91.     The Plaintiffs therefore claim damages in an amount to be determined at trial.


WHEREFORE, the Plaintiffs pray for relief under all counts as set forth herein.

                                    Attorney for the Plaintiffs


                          Page 16 of 17

Name:        Scott A. Thackaberry
Atty. for:   Plaintiffs
Address:     3008 Lincoln Road
             P.O. Box 3453
             Oak Brook, IL 60522
Tel. No.:    (847) 919-0705