DOCKETED

JUN 2 4 2004

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

JUN 2 3 2004 *rg*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| HAROLD BLUM, NANCY BENSEN, JAMES C. STRAIT, SEAN McEWAN, DALE NOTBUSCH, EDWARD HEALY, DIANE MALONE, STEVEN F. NEYLON, JEFFREY EDWARDS and MORGAN SHANK, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 03 C 7334 |
| RMI NETWORK SERVICES, INC., FLAGSHIP INTEGRATION SERVICES, INC., KIM FLAGSTAD, WILLIAM BORGSTROM, MICHAEL CALUMET, MICHAEL SHAPIRO, and DYNAMIC MANAGEMENT SOLUTIONS, INC., | ) ) ) ) ) ) | Judge Plunkett |
| Defendants. | ) ) | |

## NOTICE OF FILING

TO:     Scott A. Thackaberry
        3008 Lincoln Road
        P.O. Box 3453
        Oak Brook, IL 60522

PLEASE TAKE NOTICE that on the 23rd day of June 2004, the undersigned caused to be filed with the Clerk of the U.S. District Court for the Northern District of Illinois the following pleadings, true copies of which are submitted herewith and hereby served upon you: (1) Defendants' Motion to Dismiss Amended Complaint; and (2) Defendants' Brief In Support Of Their Motion To Dismiss Amended Complaint.

MICHAEL SHAPIRO and DYNAMIC
MANAGEMENT SOLUTIONS, INC.,

By:_____
      One of their Attorneys

- 183214.1

12

Michael J. Devine
James E. O'Halloran
Deutsch Levy & Engel, Chartered
225 W. Washington Street, Suite 1700
Chicago, IL 60606
(312) 346 - 1460

## CERTIFICATE OF SERVICE

I, James E. O'Halloran, an attorney, hereby certify that I caused this notice of filing and the above-referenced pleadings to be served upon counsel of record at the above-stated address by depositing true copies in the U.S. mail, postage prepaid, on the 23rd day of June 2004.

- 183214.1

DOCKETED

JUN 2 4 2004

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

| | |
|---|---|
| HAROLD BLUM, NANCY BENSEN, JAMES C. STRAIT, SEAN McEWAN, DALE NOTBUSCH, EDWARD HEALY, DIANE MALONE, STEVEN F. NEYLON, JEFFREY EDWARDS and MORGAN SHANK, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| RMI NETWORK SERVICES, INC., FLAGSHIP INTEGRATION SERVICES, INC., KIM FLAGSTAD, WILLIAM BORGSTROM, MICHAEL CALUMET, MICHAEL SHAPIRO, and DYNAMIC MANAGEMENT SOLUTIONS, INC., | ) ) ) ) ) ) |
| Defendants. | ) |

JUN 2 3 2004 *rq*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Case No. 03 C 7334

Judge Plunkett

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

The defendants, Michael Shapiro and Dynamic Management Solutions, Inc., by their attorneys, Michael J. Devine and James E. O'Halloran, of Deutsch Levy & Engel, Chartered, move this Honorable Court for the entry of an order dismissing the claims stated against them in Counts III and V of Plaintiffs' Amended Complaint. In support thereof, defendants submit and incorporate herein their accompanying "Defendants' Brief In Support Of Their Motion To Dismiss Amended Complaint."

Wherefore, for the reasons set forth in their accompanying brief, the defendants, Michael Shapiro and Dynamic Management Solutions, Inc., by their attorneys, pray that Counts III and V of plaintiffs' Amended Complaint be dismissed as against them.

- 183210.1

*12*

DOCKETED

JUN 2 4 2004

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

JUN 2 3 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| HAROLD BLUM, NANCY BENSEN, JAMES C. STRAIT, SEAN McEWAN, DALE NOTBUSCH, EDWARD HEALY, DIANE MALONE, STEVEN F. NEYLON, JEFFREY EDWARDS and MORGAN SHANK, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 03 C 7334 |
| RMI NETWORK SERVICES, INC., FLAGSHIP INTEGRATION SERVICES, INC., KIM FLAGSTAD, WILLIAM BORGSTROM, MICHAEL CALUMET, MICHAEL SHAPIRO, and DYNAMIC MANAGEMENT SOLUTIONS, INC., | ) ) ) ) ) ) | Judge Plunkett |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS AMENDED COMPLAINT

The defendants, Michael Shapiro and Dynamic Management Solutions, Inc., by their

attorneys, Michael J. Devine and James E. O'Halloran, of Deutsch Levy & Engel, Chartered, submit

this memorandum of law in support of their motion to dismiss plaintiffs' Amended Complaint.[1]

## INTRODUCTION

The plaintiffs in this matter are former employees of defendant RMI Network Services, Inc.

("RMI"). Am.Cpt., ¶17. As best as can be discerned from the allegations in the Amended

Complaint, RMI sold its assets and otherwise went out of business and, in doing so, failed to pay

---

[1]     A copy of Plaintiffs' Amended Complaint is attached hereto as Exhibit A.

- 182794.1

12

Plaintiffs wages and employee benefits to which they were entitled. Plaintiffs further allege that defendant Flagstad, CEO and principal shareholder of RMI, misappropriated firm assets for her personal use in lieu of honoring Plaintiffs' wage and employee benefit obligations.

From this fairly straightforward scenario, Plaintiffs assert numerous claims ranging from breach of fiduciary duty to violation of RICO. At issue in this brief are two claims alleged against defendants Michael Shapiro and Dynamic Management Solutions, Inc. ("Dynamic"). As alleged in the Amended Complaint, Shapiro is an officer and principal shareholder of Dynamic, the complaint further alleging that "Shapiro also assumes finance or administrative duties for RMI." Am.Cpt., ¶16. Count III alleges a claim for violation of RICO against all defendants, including Shapiro and Dynamic. Count V alleges a claim for "fraud in the inducement to contract" against all defendants, including Shapiro and Dynamic.

As discussed herein, both of these claims lack merit and must be dismissed as against Shapiro and Dynamic.

## ARGUMENT

### I.

**PLAINTIFFS' COUNT III FOR VIOLATION OF RICO MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE THE PREDICATE ACTS OF MAIL AND WIRE FRAUD WITH PARTICULARITY UNDER RULE 9(b).**

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.* ("RICO"), was not meant to and does not apply to every mundane business or employment dispute. To the contrary, RICO was meant to address "long-term criminal conduct" by organized crime syndicates and legitimate corporations under the sway of organized crime. *Pizzo v. Bekin Van Lines Co.*, 258

2

- 182794.1

F.3d 629, 633 (7ᵗʰ Cir. 2001).

In keeping with this statutory purpose, plaintiffs alleging civil RICO claims are subject to rigid pleading requirements. In particular, where mail or wire fraud is alleged as the "predicate act" underlying the RICO claim, the plaintiff is subject to Federal Rule of Civil Procedure 9(b), which requires specific allegations of who, where, when, what, and how:

> Rule 9(b) is of course applicable to allegations of fraud in a civil RICO complaint. Accordingly, a RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme.

*Goren v. New Vision International, Inc.* 156 F.3d 721, 726 (7ᵗʰ Cir. 1998); *see also, Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7ᵗʰ Cir. 1994) (Rule 9(b) requires allegations identifying person making misrepresentation, the time, place, and content of the misrepresentation, and the means by which it was communicated to plaintiff). Additionally, it is well-recognized by Seventh Circuit decisions that a plaintiff cannot circumvent these pleading requirements by simply "lumping together" multiple defendants in the allegations of the complaint. *See, e.g., Goren*, 156 F.3d at 730; *Vicom*, 20 F.3d at 778.

Plaintiffs' Amended Complaint falls far short of meeting these pleading requirements. With respect to defendants Dynamic and Shapiro, the Amended Complaint alleges only the following:

- "the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic have conspired to advertise positions of employment, using both the Internet and phones, as well as the mails, to contact prospective and current employees" (Am.Cpt., ¶45);

- "These Defendants contacted the Plaintiffs to induce them to work, or continue to work, for Defendant RMI" (Am.Cpt., ¶45);

3

• "As such, these Defendants did make misrepresentations, or omitted disclosing relevant information, regarding the financial condition of the Defendants RMI [*sic*], so as to deceive the Plaintiffs into going to work, or continuing to work, for Defendants RMI [*sic*]" (Am.Cpt., ¶47);

• "The Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic engaged in making misrepresentations or omissions for personal gain and benefit" (Am.Cpt., ¶52).

It is beyond dispute that these allegations do not adequately state a claim for a civil RICO violation. Plaintiffs merely lump Dynamic and Shapiro in with various "Defendants," and then fail to allege with specificity what representations were made by Dynamic and Shapiro, to whom they were made, when they were made, where they were made, and how they were made. The meager, vague allegations of the Amended Complaint fail to notify Dynamic and Shapiro as to their role in this "criminal enterprise," and further prevent the Court and defendants from assessing whether a viable RICO claim exists at all. As such, Plaintiffs' Amended Complaint must be dismissed under the standards set forth in *Goren*, *Vicom*, and numerous other Seventh Circuit decisions. *See, e.g. Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629 (7th Cir. 2001), and *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930 (7th Cir. 1999).

Furthermore, to the extent Plaintiffs' Amended Complaint alleges facts at all, the scenario outlined in that pleading reveals a fairly typical employer-employee dispute not within the scope of RICO. A company went out of business and, in doing so, didn't pay its employees wages and benefit plan contributions they had coming to them. This does not constitute a RICO violation.

"In order to state a viable cause of action under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Goren v. New Vision International, Inc.* 156 F.3d 721, 727 (7th Cir. 1998). Even if Plaintiffs' Amended Complaint complied with Rule 9(b), the facts contained in that pleading demonstrate that Plaintiffs do not

4

possess a viable RICO claim:

    *1. **Conduct:*** The first element of a RICO claim requires that the defendant must have "participated in the operation or management" of the RICO enterprise. *Goren*, 156 F.3d at 727; *see also, U.S. v. Swan*, 250 F.3d 495, 498 (7th Cir. 2000). Mere participation in the "activities" of the enterprise is insufficient; the defendant must participate in the "operation or management" of the enterprise. *Id.*

    As discussed below, Plaintiffs fail to allege a distinct "enterprise" to begin with, and further fail to allege how Shapiro and Dynamic participated in the operation or management of the enterprise. Rather, the Amended Complaint alleges only that Shapiro is an officer and principal shareholder of Dynamic, a company with offices at 676 N. Michigan Avenue, Chicago, Illinois (Am.Cpt., ¶16); that "Shapiro also assumes finance or administrative duties for the Defendant RMI" (Am.Cpt., ¶16); that Shapiro and Dynamic (and other defendants) advertised positions of employment with defendant RMI (Am.Cpt., ¶45); and that Shapiro and Dynamic (and other defendants) made unspecified misrepresentations or omissions to Plaintiffs regarding the financial condition of RMI (Am.Cpt., ¶47).

    Aside from failing to provide specifics relative to Shapiro and Dynamic's purported fraudulent activities, the Amended Complaint also fails to allege how Shapiro and Dynamic were related to, participated in, or managed the RICO enterprise. On its face, the Amended Complaint indicates that Dynamic was merely an outside contractor rendering services to RMI, which is not enough to subject a party to RICO liability. *See Goren*, 156 F.3d at 728 ("simply performing services for the enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability"); *see also, Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d

930, (7th Cir. 1999) (broker was "mere hireling" of purported criminal enterprise and therefore not liable under RICO).

   **2. *Enterprise:*** "A criminal enterprise, as distinct from a normal enterprise that gets into trouble with the law from time to time, is an enterprise that *habitually* resorts to illegal methods of doing business." *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) (emphasis in original).   To prevail under RICO, the plaintiff must prove the existence of a RICO enterprise separate from the alleged racketeering activity. *In re Mexico Money Transfer Litigation*, 164 F.Supp.2d 1002, 1015 (N.D.Ill. 2000). The enterprise must be more than just a corporation and its employees and affiliates conducting the ordinary business of the corporation. *Id.*; *see also, Chen v. Mayflower Transit, Inc.*, 159 F.Supp.2d 1103, 1109 (N.D.Ill. 2001) ("enterprise" not found where a corporation deals with its agents in the ordinary way). The hallmark of a RICO "enterprise" is an "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Clark v. Robert W. Baird Co., Inc.*, 142 F.Supp.2d 1065, 1073 (N.D.Ill. 2001). Where a plaintiff fails to allege a distinct RICO "enterprise," the claim is properly dismissed. *Id.*

   Plaintiffs' Amended Complaint fails to allege an "enterprise" at all. At best, Plaintiffs' pleading alleges only a company that went out of business without honoring obligations owed to its employees. Rather than alleging an identifiable, distinct "structure" separate and apart from RMI – the employer – Plaintiffs merely join officers and employees of RMI (Flagstad, Calumet) and a contractor rendering services to RMI (Dynamic). This is insufficient and the Amended Complaint also must be dismissed for failing to allege a distinct RICO "enterprise." *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999).

6

- 182794.1

**3. Pattern:** In order to prevail on a civil RICO claim, a plaintiff must also plead and prove a "pattern of racketeering activity." In order to do so, "a plaintiff must show that the criminal activity is continuous (or that there is a threat of continuity) and that the predicate acts are related." *Clark v. Robert W. Baird Co., Inc.*, 142 F.Supp.2d 1065, 1072 (N.D.Ill. 2001). This "continuity plus relationship" requirement of RICO arises out of the legislative intent that RICO apply to long-term criminal conduct, rather than sporadic or isolated fraudulent conduct. *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 779 (7th Cir. 1994). "Continuity" requires either a completed criminal scheme perpetrated over a substantial period of time (close-ended) or "past conduct that by its nature projects into the future with a threat of repetition" (open-ended). *Vicom*, 20 F.3d at 780-82. A close-ended scheme taking place over a period of nine months or less "likely does not satisfy the duration requirement" of a close-ended RICO "pattern of racketeering activity." *Vicom*, 20 F.3d at 780.

Plaintiffs' Amended Complaint fails to allege either a close-ended or open-ended "pattern of racketeering activity." Although wholly lacking in detail, it appears that the conduct complained of by Plaintiffs was a one-time affair -- RMI went out of business without paying them wages and employee benefits to which they were entitled. By its nature, this conduct was short-lived, singular, and not capable of repetition in the future.

In sum, it is patently clear that Plaintiffs' Count III for violation of RICO fails to comply with Rule 9(b) and must be dismissed on those grounds. Moreover, the limited allegations in the Amended Complaint plainly demonstrate that Plaintiffs' claim falls far outside the scope of RICO and that defendants Shapiro and Dynamic cannot be held liable under that statute.

7

- 182794.1

## II.

### PLAINTIFFS' COUNT V FOR "FRAUD IN THE INDUCEMENT TO CONTRACT" MUST BE DISMISSED FOR ITS FAILURE TO COMPLY WITH RULE 9(b) AND FOR ITS FAILURE TO STATE A CLAIM.

Plaintiffs' Count V purports to state a claim against defendants RMI, Flagstad, Flagship, Calumet, Shapiro, and Dynamic for "fraud in the inducement to contract." This state law claim is predicated on Plaintiffs' allegations that defendants RMI, Flagstad, Flagship, Calumet, Shapiro, and Dynamic advertised employment positions when these defendants "knew or should have known" that funds for compensation were not available; that defendants advertised the existence of a 401(k) retirement plan "without disclosing breaches of fiduciary duty that had or were about to occur"; that defendants failed to disclose that payroll checks had at times previously been dishonored; that defendants failed to disclose that some employees were not added or timely added to the employer health and dental plans; and that defendants failed to disclose that Flagstad had written checks on accounts having no funds. Am.Cpt., ¶63.

Like Plaintiffs' RICO claim against Shapiro and Dynamic, Count V also must be dismissed for failing to comply with Rule 9(b). "Rule 9(b) requires the plaintiff to plead the who, what, when, where and how of the alleged fraud." *Clark v. Robert W. Baird Co., Inc.*, 142 F.Supp.2d 1065, 1073 (N.D.Ill. 2001).

Moreover, even if Plaintiffs complied with Rule 9(b), their fraud claim is patently without merit. The fraudulent conduct alleged consists entirely of non-disclosures, or fraudulent concealment. Under Illinois law, however, a claim for fraudulent concealment requires that the defendant be under a legal duty to disclose the facts at issue. *Hirsch v. Feuer*, 702 N.E.2d 265, 273 (Ill.App. 1st Dist. 1998). A duty to disclose does not exist in the absence of a fiduciary or

8

confidential relationship. *Schrager v. North Community Bank*, 767 N.E.2d 376, 384-85 (Ill.App. 1st Dist. 2002). Otherwise, "[m]ere silence in a transaction does not amount to fraud." *Hirsch*, 702 N.E.2d at 273.

As applied to the present matter, Plaintiffs – as best as can be discerned from the pleadings – were job applicants. It is self-evident that the employer in this context is not a fiduciary of the job applicant and under no legal duty to disclose the financial condition of the company. With respect to Shapiro and Dynamic, they were not even the employer at issue.

Accordingly, there is no question that Count V of Plaintiffs' Amended Complaint fails to comply with Rule 9(b) and should be dismissed on those grounds. Additionally, as set forth above, even if Plaintiffs' claim was stated with particularity, Count V is defective on its face because an employer is under no legal duty to convey to a job applicant the financial condition of the company.

## CONCLUSION

For the above reasons, the defendants, Michael Shapiro and Dynamic Management Solutions, Inc., by their attorneys, pray that Counts III and V of plaintiffs' Amended Complaint be dismissed as against them.

MICHAEL SHAPIRO and DYNAMIC
MANAGEMENT SOLUTIONS, INC.,

By: _____
         One of their Attorneys

Michael J. Devine
James E. O'Halloran
Deutsch Levy & Engel, Chartered
225 W. Washington Street, Suite 1700
Chicago, IL 60606
(312) 346 - 1460

- 182794.1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

HAROLD BLUM, NANCY BENSEN, )
JAMES C. STRAIT, SEAN MCEWAN, )
DALE NOTBUSCH, EDWARD HEALY, )
DIANE MALONE, STEVEN F. )
NEYLON, JEFFREY EDWARDS )
and MORGAN SHANK, )
                              )
               Plaintiffs, )
                              )
    v.                            )
                              )
RMI NETWORK SERVICES, INC., )
FLAGSHIP INTEGRATION )
SERVICES, INC., KIM FLAGSTAD )
(a/k/a KIM M. FLAGSTAD, KIM )
MICHELE FLAGSTAD, KIM )
WELCH, KIM M. WELCH, KIM )
FLAGSTAD WELCH, KIM WELCH )
FLAGSTAD AND MRS. GEORGE E. )
WELCH), WILLIAM BORGSTROM, )
MICHAEL CALUMET, MICHAEL )
SHAPIRO and DYNAMIC )
MANAGEMENT SOLUTIONS, INC. )
                              )
           Defendants. )

No.: 03 C 7334
[Amended Complaint]
Judge: Plunkett

RECEIVED

MAR 3 1 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## AMENDED COMPLAINT

The Plaintiffs, Harold Blum, Nancy Bensen, James C. Strait, Sean McEwan, Dale

Notbusch, Edward Healy, Diane Malone, Steven F. Neylon, Jeffrey Edwards and Morgan Shank,

allege:

1.     The Plaintiff, Harold Blum, "Blum," resides at 1316 Spring Beach Way, Village

of Cary, Mc Henry County, Illinois.

2.     The Plaintiff, Nancy Bensen, "Bensen," resides at 3954 Whispering Trails Drive,



Village of Hoffman Estates, County of Cook, Illinois.

3. The Plaintiff, James C. Strait, "Strait," resides at 1806 Canterfield Parkway West, Village of West Dundee, County of Kane, Illinois.

4. The Plaintiff, Sean McEwan, "McEwan," resides at 704 Ridge Drive, City of Marengo, County of Mc Henry, Illinois.

5. The Plaintiff, Dale Notbusch, "Notbusch," resides at 10115 Wilmette Avenue, Village of Algonquin, County of Mc Henry, Illinois.

6. The Plaintiff, Steven F. Neylon, "Neylon," resides at 1113 Mondale Drive, City of Rockford, County of Winnebago, Illinois.

7. The Plaintiff, Edward Healy, "Healy," resides at 627 Leonard Parkway, City of Crystal Lake, County of Mc Henry, Illinois.

8. The Plaintiff Diane E. Malone, "Malone," resides at 488 Rose Lane, Village of Bartlett, County of Cook, Illinois.

9. The Plaintiff, Jeffrey Edwards, "Edwards," resides at 608 N. Wolf Road, #8, Village of Hillside, County of Cook, Illinois.

10. The Plaintiff, Morgan Shank, "Shank," resides at 136 John Street, City of DeKalb, County of DeKalb, Illinois.

11. The Defendant, RMI Network Services, Inc., "RMI," is a duly organized corporation, operating in the State of Illinois, with its principal offices located, on information and belief at 225 Rue Jardin, Village of Deer Park, County of Lake, Illinois.

12. The Defendant, Flagship Integration Services, Inc., is, on information and belief,

a duly organized corporation, operating in the State of Illinois, with its principal

offices located at 225 Rue Jardin, Village of Deer Park, County of Lake, Illinois.

This Defendant's principal owner is the Defendant Kim Flagstad. This Defendant

is the principal beneficiary of an alleged sale, under the Uniform Commercial

Code; whereby, with the help of Continental Community Bank & Trust Co., the

Defendant RMI transferred its principal assets to this Defendant, after the

Plaintiff's filed their Complaint.

13.     The Defendant, Kim Flagstad (a/k/a Kim M. Flagstad, Kim Michele Flagstad,

Kim Welch, Kim M. Welch, Kim Flagstad Welch, Kim Welch Flagstad and Mrs.

George E. Welch), "Flagstad," is the principal shareholder, chief operating officer

and fiduciary of the RMI Network Services, Inc., employee benefit plans. While

Flagstad owns houses in Florida and Arizona, on information and belief, Flagstad

principally resides at 225 Rue Jardin, Village of Deer Park, County of Lake,

Illinois.

14.     The Defendant, William Borgstrom, "Borgstrom," is an employee of Defendant

RMI and the paramour of Defendant Flagstad, who, while maintaining a residence

at 1330 W. Columbia, City of Chicago, County of Cook, Illinois, on information

and belief, principally resides with Defendant Flagstad at 225 Rue Jardin, Village

of Deer Park, County of Lake, Illinois.

15.     The Defendant, Michael Calumet, "Calumet," is the chief financial officer of

Defendant RMI with signatory authority over the bank accounts of Defendant

RMI; Calumet resides at 6553 N. Oxford, City of Chicago, County of Cook,

Illinois.

16. The Defendant, Michael Shapiro, "Shapiro," is an officer and, on information and belief, the principal shareholder of Dynamic Management Solutions, Inc., "Dynamic," a company operating in the State of Illinois whose principal office is at 676 N. Michigan Avenue, Suite 3120, City of Chicago, County of Cook, Illinois; Shapiro also assumes finance or administrative duties for the Defendant RMI; and Shapiro resides at 217 16th Street, City of Wilmette, County of Cook, Illinois.

17. The Plaintiffs were, from time to time, all employees of Defendant RMI, who benefitted from the work efforts of the Plaintiffs.

18. This action arises under the Employee Retirement Income Security Act of 1974 (29 U.S.C.A., Sections 1001, et seq.). The court's jurisdiction is based on Section 1331 of Title 29 of the Code (29 U.S.C.A., Section 1331).

19. Venue is proper pursuant to 1391(a) of Title 28 of the Code (28 U.S.C.A., Section 1391(a)).

20. Moreover, this action arises under Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section, 1001 et seq., and this court has jurisdiction under ERISA Section 502(e), 29 U.S.C. Section 1132(e) with venue of this action properly laid in the Northern District of Illinois by virtue of ERISA Section 502(e)(2), 29 U.S.C. 1132(e)(2).

21. Further, this action arises under Sections 1962(c) of Title 18 and is a federal question pursuant to Section 1964(c) of Title 18.

I

## BREACH OF FIDUCIARY DUTY

22.   The Defendant Flagstad is both a trustee and fiduciary over the Plaintiff's

employee benefit plan within the meaning of ERISA Section 3(21), 29 U.S.C.

Section 1002(21) and subject to the fiduciary duties imposed by Sections 404 and

409 of ERISA, 29 U.S.C. 1104 and 1109.

23.   The Defendant Calumet possessed signatory authority over the funds maintained

in a bank account after collection of said funds from the Plaintiff's payroll.

24.   The Defendant Flagstad, along with Defendant Calumet, approved and made

distributions to Defendant Borgstrom, on information and belief, of plan assets

that she commingled with the general assets of the corporation.

25.   Said distributions have, in part, caused delays in the funding or timely turning

over of assets, to those entities charged with maintaining the plan. Those delays

or failures to timely turnover funds resulted in a significant financial loss to the

Plaintiffs. Those delays or failure to timely turnover funds violates the Code of

Federal Regulations, Section 2510.3-102(a) that states that such contributions to

the plan must be made as of the earliest date on which such contributions can be

reasonably segregated from the employer's general assets, which here was the

date that the employee's payroll checks had been issued.

26.   Additionally, Defendant Flagstad, on information and belief has directed those

commingled funds, along with other assets of Defendant RMI to pay for

Defendant Flagstad's homes in Florida and Arizona, her boat and her plane, as

well as to pay for personal items, including, but not limited to, items such as Kitty
Liter, gasoline, cosmetics and food.

27. The Defendant Flagstad approved and distributed said funds with the knowledge,
assistance and consent of Defendant Calumet, who delayed those contributions to
the plan, in part for the benefit of Defendant Borgstrom.

28. The Defendants RMI, Flagstad and Calumet failed to discharge their fiduciary
duties regarding plan assets as required by 29 U.S.C. Section 1104(a)(1)(A) and
(B), in that among other things, they permitted the Defendants Flagstad and
Calumet to obtain control over plan assets which were then, on information and
belief, transferred to the Defendants Borgstrom and Flagstad.

29. Moreover, the Defendants RMI, Flagstad and Calumet did conspire to issue
payroll stubs showing that the funds withheld from the Plaintiff's payroll checks
had been timely turned over to the third party maintaining accounts for said funds.

30. As such, the Defendants RMI, Flagstad and Calumet did fail to inform, and did
actively conceal from, the Plaintiffs that the funds for their employee benefits had
not been properly held in a trust account segregating those funds from the General
Assets of the Defendant RMI.

31. Further, the Defendants RMI, Flagstad, Flagship and Calumet did conspire to
deny Plaintiff Neylon his rights under ERISA, by knowingly failing to enroll him
in those health plans of RMI and Flagship, when he became eligible for such
employer paid benefit. Then, the Defendants Flagship and Flagstad sought to
conceal this omission, by issuing a health plan identification card to Neylon, after

Page 6 of 17

Neylon terminated his employment with Defendant Flagship. The health plan

identification card issued did not provide any benefit for Plaintiff Neylon.

Moreover, the delay in enrolling Plaintiff Neylon denied him the opportunity to

plan and obtain any medically necessary care to which he was entitled.

32.     On information and belief, the Plaintiff Shank and Plaintiff Neylon did not

        participate in the aforementioned 401(k) employee benefit plan.

33.     As a direct and proximate result of the Defendants RMI, Flagstad and Calumet's

        breach of their fiduciary duty, the Plaintiffs, as identified above, are entitled to

        damages in an amount to be determined at trial.

34.     To the extent or degree that Defendant Borgstrom received cash or other benefits

        derived from the forgoing breaches of fiduciary duty, the Plaintiffs, as identified

        above, ask this court to order the Defendant Borgstrom to turnover said sums with

        any profits thereon to the Plaintiffs.

35.     To the extent and degree that the Defendants have improperly or wrongfully

        transferred Defendant RMI's assets to Defendant Flagship. The Plaintiffs ask this

        Court to order the Defendant Flagship to turnover any such money or personal

        property, including, but not limited to those assets transferred as a result of the

        alleged U.C.C., with any profits thereon to the Plaintiffs.

36.     Moreover, the Plaintiffs, as identified above, ask this Court to order such other

        relief as this court deems fair and just.

II

RICO

37.   The Plaintiffs re-allege Paragraphs 1 through 36.

38.   The theft or embezzlement of an employee benefit plan in violation of 18 U.S.C.

      664 is a predicate act for the purposes of establishing a violation of RICO. 18

      U.S.C. 1961(1).

39.   The Defendant RMI, by and through its officers and agents, did conspire with the

      Defendants Flagstad, Calumet and Borgstrom to engage in a pattern of actions,

      including, but not limited to, issuing payroll checks and ERISA plan notices,

      communications and information so as to gain control over the assets of the

      Plaintiff's qualified employee benefit plan, commonly known as a 401(k) plan.

40.   The Defendants RMI and Flagship, by and through their officers and agents, did

      conspire with the Defendant Flagstad to engage in a pattern of actions, including,

      but not limited to, issuing offers of employment, ERISA plan notices,

      communications and information so as to gain control over amounts that they

      were lawfully and legally obligated to pay, under the qualified health and dental

      plans, for the benefit of Plaintiff Neylon.

41.   The Defendants RMI, Flagstad, Calumet and Borgstrom engaged in this conduct,

      regarding the 401(k) plan, for personal gain and benefit by misleading the

      Plaintiffs, except Shank and Neylon, as to the cause of their economic loss.

42.   The Defendants RMI, Flagship and Flagstad engaged in this conduct, regarding

      the health and dental plans, for personal gain and benefit by misleading Plaintiff

      Neylon as to the cause of his economic loss.

43.     As such, the Plaintiffs, except Shank, claim damages in an amount to be determined at trial, including, but not limited to compensatory damages, statutory damages, attorneys' fees and costs.

## III

## RICO

44.     The Plaintiff's re-allege Paragraphs 1 through 43.

45.     Despite the Defendant RMI's continued and persistent failures to pay employees' wages for work done and failure to make timely contributions to the Defendants RMI's employee benefit plans, the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic have conspired to advertise positions of employment, using both the internet and phones, as well as the mails, to contact prospective and current employees. These Defendants contacted the Plaintiffs to induce them to work, or continue to work, for Defendant RMI, with the intent to benefit from the services provided.

46.     Despite the Defendant Flagship's failure to timely, if at all, pay wages for work done and failure to make, or to make timely, contributions to the Defendant Flagship's health and dental plans, the Defendants Flagship and Flagstad, have conspired to advertise positions of employment using both the internet and phones, as well as the mails, to contact Plaintiff Neylon. These Defendants contacted Plaintiff Neylon to induce him to work, and to continue work, for the Defendant Flagship, with the intent to benefit from the services provided.

47. As such, these Defendants did make misrepresentations, or omitted disclosing relevant information, regarding the financial condition of the Defendants RMI, so as deceive the Plaintiffs into going to work, or continuing to work, for Defendants RMI.

48. As such, the Defendants Flagship and Flagstad, did make misrepresentations, or omitted disclosing relevant information, regarding the financial condition of the Defendant Flagship, so as to deceive the Plaintiff Neylon into going to work, or continuing to work, for Defendant Flagship.

49. At all times, the Plaintiffs were entitled to reasonably rely on the misrepresentations of the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic.

50. At all times, the Plaintiff Neylon was entitled to reasonably rely on the misrepresentations of the Defendants Flagship and Flagstad.

51. All Plaintiffs relied on the misrepresentations or omissions of these Defendants, as set forth herein.

52. The Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic engaged in making misrepresentations or omissions for personal gain and benefit.

53. The Defendants Flagship and flagstad engaged in making misrepresentations or omissions, to Plaintiff Neylon, for the personal gain and benefit.

54. The reasonable reliance of the Plaintiffs upon the misrepresentations and omissions of the Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic were both the direct and proximate cause of the financial losses of the Plaintiffs.

55. The reasonable reliance of the Plaintiff Neylon upon the misrepresentations and omissions of the Defendants Flagship and Flagstad were both the direct and proximate cause of the financial losses of the Plaintiffs.

56. The Plaintiffs seek damages in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, attorneys' fees and costs.

IV

MULTIPLE VIOLATIONS OF THE ILLINOIS WAGE PAYMENT
AND COLLECTION ACT

57. The Plaintiff's re-allege Paragraphs 1 through 56.

58. The Plaintiffs, as employees of Defendant RMI, are entitled to compensation for services rendered pursuant to 820 ILCS 115/4 in a time, place and manner consistent with 820 ILCS 115/4.

59. The Defendants RMI, Flagship and Flagstad, by her tacit disregard for the corporate identity, and Calumet have breached their respective duties to pay wages and compensation consistent with 820 ILCS 115/4.

60. To wit, all Plaintiffs have been injured in an amount to be determined at trial.

V

FRAUD IN THE INDUCEMENT TO CONTRACT

61. The Plaintiffs re-allege Paragraphs 1 through 60.

62.    The Defendants RMI, Flagstad, Flagship, Calumet, Shapiro and Dynamic

engaged in affirmative actions and omissions designed to mislead prospective job

candidates as to the liquidity and solvency of Defendant RMI.

63.    These actions included, but are not limited to, advertising positions of

employment for compensation on the World Wide Web when the Defendants

RMI, Flagstad, Flagship, Calumet, Shapiro and Dynamic either knew or should

have known that no funds for compensation were available, by issuing letters

mailed letters of employment that these Defendants either knew or should have

known could not have been honored, by alleging the existence of a 401(k)

retirement plan without disclosing breaches of fiduciary duty that had or were

about to occur, without disclosing that, from time to time, the Defendant RMI

issued payroll checks that were dishonored by the institution upon which those

checks were drawn, without disclosing that some employees were not added, or

were not added timely, to the qualified employer health and dental plans and

without disclosing that, from time to time, Defendant Flagstad engaged in writing

checks on accounts without funds and that she subsequently deposited those

drafts so drawn in other accounts upon which the company issued payroll checks.

64.    The Defendants RMI, Flagstad, Calumet, Shapiro and Dynamic made these

affirmative misrepresentations, or concealed omissions, with the intent that the

Plaintiffs would rely on them; the Plaintiffs were reasonably entitled to rely on

the affirmative misrepresentations, or omissions, of the Defendants RMI,

Flagstad, Calumet, Shapiro and Dynamic.

65.   As a direct and proximate cause of one or more these affirmative acts or omissions, the Plaintiffs have suffered an economic loss in an amount to be determined at trial.

# VI

## VIOLATION OF ILLINOIS STATUTE REGARDING DISHONORED DRAFTS

66.   The Plaintiffs re-allege Paragraphs 1 through 65.

67.   From time to time, the Defendants RMI, Flagstad, Flagship and Calumet did cause to issue payroll checks to various Plaintiffs that were not honored upon presentment to the drawee.

68.   These Plaintiffs, pursuant to 810 ILCS 5/3-806, are entitled to the amount of $25, or for all costs and expenses, including attorneys' fees, whichever is greater.

69.   As such, those Plaintiffs ask for damages in an amount to be determined at trial.

# VII

## FRAUD IN THE RETENTION OF EMPLOYEES FOR THE BENEFIT OF THE DEFENDANTS RMI AND FLAGSHIP

70.   The Plaintiffs re-allege Paragraphs 1 through 69.

71.   The Defendants did engage in a scheme to deceive the Plaintiffs as to the financial situation of the Defendant RMI, by engaging, or failing to engage, in actions that include, but are not limited to, issuing payroll checks that were dishonored, claiming the existence of signed client contracts at a meeting on

October 7, 2002 that the Defendants knew did not exist, issuing payroll stubs with affirmative misrepresentations upon them, issuing, or failing to issue, employee benefit plan communications, notices or information that should have included information relevant to the financial strength of the Defendant RMI.

72. The Defendants Flagship and Flagstad did engage in a scheme to deceive the Plaintiff Neylon as to the financial situation of the Defendant Flagship, by engaging, or failing to engage, in actions that include, but are not limited to, issuing a payroll check that was dishonored, issuing payroll stubs with affirmative misrepresentations upon them, issuing, or failing to issue, employee benefit plan communications, notices or information that should have included information relevant to the financial strength of the Defendant Flagship.

73. The Defendants either did not have a reasonable ground to know the aforementioned actions were true or in fact knew that some of those representations were false when made by them.

74. The Defendants committed such actions or omissions with the intent that the Plaintiffs would rely on them, so that the Defendant RMI could retain the Plaintiffs as employees and so that the Defendant RMI could enjoy the benefit of their collective work effort.

75. The Defendants Flagship and Flagstad committed such actions or omissions with the intent that the Plaintiff Neylon would rely on them, so that the Defendant Flagship could retain the Plaintiff Neylon and so that the Defendant Flagship could enjoy the benefit of his work effort.

Page 14 of 17

76.  The Plaintiffs did continue to work in reasonable reliance on the representations of the Defendants and without knowledge of the falsity of those misrepresentations and without knowledge of the omissions.

77.  The Defendants engaged in this conduct for personal gain and benefit and those misrepresentations and omissions were both the direct and proximate cause of the economic losses sustained by the Plaintiffs.

78.  The Plaintiffs claim damages in an amount to be determined at trial.


## VIII

## BREACH OF CONTRACT

79.  The Plaintiffs re-allege Paragraphs 1 through 78.

80.  An at will contract of employment existed between the Plaintiffs and the Defendant RMI and, as for Plaintiff Neylon, Flagship.

81.  The Defendants RMI and Flagship, by and through its officers and agents, did issue "offer letters" to the Plaintiffs specifying the amount of compensation.

82.  The Plaintiffs accepted employment and began work.

83.  The Plaintiffs did work for the benefit of Defendant RMI, and, as for Plaintiff Neylon, Flagship, in exchange for the promises of wages and benefits.

84.  The Plaintiffs have performed work that at this time remains uncompensated for by the Defendant RMI, and, as for Plaintiff Neylon, Flagship.

85.  The Defendants RMI and Flagship have breached their respective duties to the Plaintiffs, respectively, under the parties' contracts of at will employment.

86.   As a direct and proximate cause of the Defendants RMI, and, as for Plaintiff
      Neylon, Flagship's failure to perform under the at will contract of employment,
      the Plaintiffs have sustained economic damages in an amount to be determined at
      trial.


                                          IX

                              UNJUST ENRICHMENT

87.   The Plaintiffs re-allege Paragraphs 1 through 86.

88.   The Plaintiffs worked hours on the premises of Defendants RMI or Flagship, or at
      remote locations at the request of an officer or agent of the Defendant RMI or
      Flagship, under the direction and supervision of the officers or agents of the
      Defendants RMI or Flagship.

89.   To date, the Defendants RMI or Flagship have enjoyed the benefit of the
      Plaintiff's effort expended upon its behalf.

90.   Despite numerous demands by the Plaintiffs for the Defendants RMI or Flagship
      to pay for the Plaintiff's respective work effort, the Defendants RMI and Flagship
      have failed to pay for that work effort so expended by the Plaintiffs and
      benefitting the Defendants RMI or Flagship.

91.   The Plaintiffs therefore claim damages in an amount to be determined at trial.


WHEREFORE, the Plaintiffs pray for relief under all counts as set forth herein.

                                          _____
                                          Attorney for the Plaintiffs

                              Page 16 of 17